# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **BRETT HORVATH** | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 1:17-CV-00256-RP** |
| | § | |
| **CITY OF LEANDER, TEXAS and** | § | |
| **BILL GARDNER, in his official and** | § | |
| **individual capacities,** | § | |
| **Defendants.** | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW DEFENDANTS CITY OF LEANDER and BILL GARDNER, and file this Motion for Summary Judgment, and would show this Honorable Court the following:

### I.
### BACKGROUND INFORMATION AND GENERAL ALLEGATIONS

Plaintiff Horvath is a former fire fighter and first responder for Defendant City of Leander. Plaintiff initially filed suit against Defendant in Texas state court alleging employment discrimination and retaliation in violation of Texas Labor Code Chapter 21 and Title VII, and violation of First Amendment rights. With the inclusion of the federal causes of action, Defendant timely removed this matter to federal court. Plaintiff thereafter amended his pleadings, but still asserts these same causes of action, which arise under the same operative facts and alleged misconduct.

Based on alleged religious beliefs, Plaintiff refused to comply with a City of Leander Fire Department mandatory vaccination policy that required all firefighter/first responders get a Tdap vaccine. Plaintiff claims that his religious needs were not reasonably accommodated after he declined to elect either of the accommodations offered to him by the City of Leander after about two months

of discussions regarding the same. Defendant would show that it engaged in an extensive interactive dialogue with Plaintiff, made reasonable efforts to accommodate his request for an exemption, and only terminated Plaintiff's employment after he refused to elect an accommodation options. Defendant now seeks summary judgment with respect to Plaintiff's claims.

## II.
## UNDISPUTED FACTUAL BACKGROUND

Plaintiff was hired by the City of Leander on April 7, 2012 as a Firefighter/EMT. *Exhibit A, Defendant 144.*

On October 1, 2014, the City of Leander Fire Department adopted an Infection Control Plan. *Exhibit A, Defendant 1002-1017.* The goal of the policy was to provide a safe and healthful work environment for staff and members of the public served by the Fire Department first responders. *Id.* Under this new policy, the Fire Department provided certain infectious disease immunizations to its employees at no cost, generally following the Center for Disease Control (CDC) Vaccination recommendations for adults, as part of a health maintenance plan. *Id.*

On November 3, 2014, the Fire Department issued a directive mandating that all personnel receive influenza shots. *Exhibit A, Defendant 667.* Plaintiff requested an exemption from the influenza vaccination, citing religious grounds. *Exhibit B, Horvath Deposition 41.* Chief Gardner consulted with Ryan Mueller, a director at the Williamson County and Cities Health District regarding Plaintiff's exemption. *Exhibit C, Gardner Deposition 19.* The exemption was approved by Fire Chief Gardner with the caveat that Plaintiff must use increased isolation, cleaning, and personal protective equipment to prevent the spread of the flu to himself, co-workers, or patients. *Exhibit A, Defendant 267.* No other vaccination exemption was requested, provided, or approved at that time. *Id.*

On July 6, 2015, Plaintiff received a promotion from Firefighter to Driver/Pump Operator, which came with a salary increase. *Exhibit A, Defendant 36.* As a Driver/Pump Operator, Plaintiff was responsible for driving fire personnel to the scene of an emergency, as well as general firefighter

duties such as responding to rescue and fire suppression scenes and performing first responder duties in medical and non-medical emergencies. *Exhibit A, Defendant 195-198.*[1]

In late 2015, flu shot time came around again, Plaintiff again requested and received an exemption from Chief Gardner. *Exhibit B, Horvath Deposition 44-48.* Also in 2015, the City of Leander Fire Department adopted a Health & Safety Program designed to provide a safe working environment of members of the fire department, despite the risks inherent in their position, to limit exposure to situations that could have harmful or undesirable consequences on the department or its members. *Exhibit A, Defendant 325-328, 401.*

Beginning in 2016, Defendant mandated that its personnel receive the Tdap vaccination, a vaccine that protects against three potentially life-threatening bacterial diseases: tetanus, diphtheria, and pertussis (also known as whooping cough). *Exhibit A, Defendant 665.* For reference, the CDC recommends the Tdap vaccine for all adults ages 19 and older who have never received the vaccine, especially health care workers who have direct contact with patients. *Exhibit F, DiGuilio 3.* There is also a State Health Department recommendation that health workers get this vaccine and a Williamson County and Cities Health District recommendation that health care workers mandate the vaccination. *Exhibit C, Gardner Deposition 26-27.* He understood this to include EMS/first responders. *Id.* The City of Leander Fire Department had applied for and secured a grant that would help fund the vaccinations so that they could be provided free of charge to Employees covered by the policy. *Exhibit A, Defendant 717-723.* The City fire fighters, who are also all first responders, were sent for TB testing and Immunization boosters. *Exhibit A, Defendant 666.*

Plaintiff sought an exemption from this vaccine on January 14 and 20, 2016. *Exhibit A, Defendant 246-247, 307.* Plaintiff's request was the first time Defendant was asked to address an accommodation request for this vaccine. In fact, Plaintiff had previously received the vaccine,

---

[1] A City of Leander firefighter's essential duties and responsibilities include but are not limited to responding to all types of rescue, fire suppression, medical and non-medical emergency calls, implementing actions required to save lives and property, participate in continuing study, training and drill activity to achieve and maintain required skills to include regular fitness program to maintain good health and physical strength, and perform rescue emergency medical care, extinguish, containment, overhaul salvage and exposure protection. *Exhibit A, Defendant 38-42.*

decades earlier. *Exhibit A, Defendant 114.* Over the next couple of months, the parties went back and forth discussing potential alternatives and accommodations to address the request, and Chief Gardner sought advice and guidance from John Teal and Dr. Christine Shen of the Williamson County and Cities Health District. *Exhibit A, Defendant 200-204, 212-229, 252, 303.* Chief Gardner's concerns were whether there were any actions that could be taken that would eliminate exposure of vaccine-preventable diseases for non-vaccinated public safety employees who provide medical attention and work in a communal living environment. *Exhibit C, Gardner Deposition 31-37.* During that time a number of different potential resolutions were presented by Plaintiff and by the Chief Gardner in an attempt to find resolution. *Exhibit A, Defendant 201-204, 212-229, 303.*

On March 8, 2016, the City presented a job assignment accommodation to Plaintiff for the position of Code Enforcement Officer. *Exhibit A, Defendant 223.* The Fire Department position would offer the same pay, same benefits, the cost to re-educate would be covered by the City and no vaccines would be necessary. *Id.*

On March 17, 2016, the City finalized its accommodation proposal for Plaintiff and gave him two options and a March 24 deadline to respond. *Exhibit A, Defendant 225-226.* The first option was to transfer him into this Code Enforcement Officer Position that would allow him to stay in the Fire Department, but work in a position that did not involve providing healthcare services or involve the communal living of a fire department. *Id.* Under this first option, he would maintain the same salary and benefits and would be provided the necessary training for the position at Defendant's expense. *Id.* The other option allowed Plaintiff to remain in his current position as long as he agreed to: (1) wear personal protective equipment at all times while on duty, (2) submit to testing for possible diseases when his health condition justified, and (3) keep a log of his temperature. Plaintiff dismissed the first option for multiple reasons. *Exhibit B, Horvath Deposition 89.* However, Plaintiff admits that he never made any real effort to determine what the new job entailed. *Id at 84.*

Plaintiff declined both options on March 21, 2016, and suggested alternative accommodations. *Exhibit A, Defendant 227.* Plaintiff believed that wearing a mask at all times, during a 24-hour shift, was medically unjustified. *Exhibit B, Horvath deposition 106-107.* Chief Gardner responded to Plaintiff via correspondence and stated that the previously stated accommodations were non-negotiable, explained the rationale, and extended the response deadline to March 28. *Exhibit A, Defendant 228.*

In addition to obtaining advice from Williamson County and Cities Health District, the City underwent independent research regarding religious accommodations in the work place, infectious diseases in general, as well as obtaining information from the infectious disease resource website and the Oregon Health and Science University. *Exhibit A, Defendant 308, 421- 484, 519-556.* Further, the City obtained information from written scholarly articles, the American Academy of Pediatrics, the Baptist Press, U.S. Department of Health and Human Service Center for Disease Control and Prevention, U.S. Equal Employment Opportunity Commission, and Texas case law. *Id.*

On March 23, 2016, Plaintiff again declined both options as presented. *Exhibit A, Defendant 229.* On March 28, 2016, Defendant initiated an Administrative Investigation to review Plaintiff's case. *Exhibit A, Defendant 231.* Assistant Chief Davis interviewed Plaintiff, with his labor representative, Jeff Foster, present. *Exhibit B, Horvath Deposition 101-102.* Plaintiff admitted to declining both options presented to him by Chief Gardner, and declined again. *Exhibit A, Defendant 232-235.* Assistant Chief Davis concluded that Plaintiff violated the Fire Department's Code of Conduct 4B, by willfully disobeying a direct order from Chief Gardner. *Id* at 242-244. As a result, Plaintiff was terminated from his employment with the Leander Fire Department on March 29, 2016. *Id* at *253-254.* Plaintiff did not appeal or otherwise challenge the termination or the presented accommodation through the City grievance system. *Exhibit A, Defendant 270-271, 762-763.*

In May 2016, the Williamson County & Cities Health District issued a situation report addressing a potential outbreak of pertussis at Deer Creek Elementary School, a school with students from Travis and Williamson counties. *Exhibit A, Defendant 670.*

Dr. Christie Shen, former Director of the Williamson County and Cities Health District, agrees that Tdap vaccines should be mandatory for firefighters and EMTs. *Exhibit D, Shen Deposition 11.* First responders have an equivalent role in healthcare as a physician or a nurse and it is standard for physicians and nurses to be vaccinated with these same vaccines. *Id.* Dr. Shen does not believe that there is any reasonable accommodation for a firefighter who objects to a Tdap booster or vaccine and is unaware of any accommodations offered. *Id at 18,* 37-38. Specifically, it is her belief Baylor Scott & White would not hire an employee, even if that employee's duties did not include direct contact with patients, unless vaccinated. *Id* at 38.

Plaintiff's expert and Defendant's expert have different opinions as to what is a medically reasonable accommodation to taking the Tdap vaccination. Plaintiff's designated expert is Dr. Lee M. Wetzler. *Exhibit E, Wexler Report.* Dr. Wexler opined that the plan proposed by Chief Gardner requiring Plaintiff to wear an N95 mask during the entirety of the 24-hour shift was not medically reasonable, but agreed with all of the other requested precautions. *Id* at 2.

Defendant's designated expert is Dr. Daniel B. DiGiulio. *Exhibit F, Dr. DiGuilio Report.* Contrary to Dr. Wexler, Dr. DiGuilio opined that Plaintiff is at risk for acquiring and subsequently transmitting pertussis despite herd immunity because pertussis infections can be entirely asymptomatic. *Id* 2-3. Herd immunity is imperfect, failures have been reported and should not be considered as providing equivalent protection to an individual as vaccination. *Id.* Although there may be other reasonable accommodation plans that would not entail the constant use of an N95 mask, a plan that includes constant N95 mask usage is not unreasonable; it is on the conservative side of the spectrum. *Id* at 4. Due to the complex nature of the problem of pertussis there is no perfect, single set of interventions. *Id.*

# III.
## SUPPORTING EVIDENCE

In support of its Motion, and in addition to any pleadings and discovery on file with this Court, Defendant relies on the following evidence by reference:

Exhibit A:     City of Leander Affidavit and Records;
Exhibit B:     Deposition of Plaintiff;
Exhibit C:     Deposition of Chief Gardner;
Exhibit D:     Deposition of Dr. Shen;
Exhibit E:     Plaintiff Expert Report; and
Exhibit F:     Defendant Expert Report

# IV.
## LEGAL STANDARD

Summary judgment is proper in any case where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of plaintiff's claim or (2) showing there is no evidence to support an essential element of plaintiff's claim. *Celotex Corp.*, 477 U.S. at 322-25. The party opposing the motion must then come forward with affirmative evidence to defeat it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Conclusory allegations, speculation and unsubstantiated assertions are not adequate to satisfy the non-movant's burden. *Douglas v. United Services Auto Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).

The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000). There must be more than "some metaphysical doubt as to the material facts." *Webb v. Cardiothoracic Surgery Assocs.*, 139 F.3d 532, 536 (5th Cir. 1998)(citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Title VII makes it "unlawful . . . for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ." 42 U.S.C. §2000e-2(a)(1). Employers subject to the statute have a statutory obligation to make reasonable accommodation for the religious observations of its employees, unless doing so would create an undue hardship.'" *Eversley v. MBank Dallas*, 843 F.2d 172, 175 (5th Cir. 1988) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)).

Similarly, the Texas Commission on Human Rights prohibits an employer from discriminating against an employee on the basis of their religion, and for retaliating against a person who opposes a discriminatory practice. Tex. Lab. Code §21.051 and §21.055. Because the express purpose of the Act is to provide for execution of the policies of Title VII, cases interpreting the federal law are guiding authority. Tex. Lab. Code §21.001(1); *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex.1999). *See also, Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005)(observing there was "no meaningful distinction" between analysis under Title VII and the TCHRA). As such, Defendant will address the federal and state discrimination and retaliation claims together.

There is no individual employee liability under Title VII or the Texas Labor Code, so Defendants will assume that the only claim asserted against Chief Gardner is for First Amendment.

At the summary judgment stage, claims of discrimination under Title VII are analyzed using the burden-shifting test, whereby the plaintiff carries the initial burden of establishing a prima facie case of religious discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To establish a prima facie case of religious discrimination based on failure to accommodate, a plaintiff must produce evidence demonstrating that: "(1) he has a bona fide religious belief that conflicts with an employment requirement; (2) he informed the employer of this belief; and (3) he was disciplined for failure to comply with the conflicting employment requirement." *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 273 (5th Cir. 2000).

Once a prima facie case is made, the burden then shifts to the employer to either 1) show that it provided a reasonable accommodation for the employee's religious practice; or 2) show that it could not offer a reasonable accommodation without undue hardship. *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1156 (10th Cir. 2000); *Weber*, 199 F.3d at 273. "Undue hardship" exists, as a matter of law, when an employer is required to bear more than a de minimis cost. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977).[2]

Plaintiff also asserts a claim for retaliation, under both the state and federal statutory schemes. To make out a prima facie case of retaliation, a plaintiff must show: "(1) participation in a protected activity known to defendant, (2) an employment action disadvantaging the person engaged in the protected activity, and (3) a causal link between the protected activity and the adverse employment action." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002). However, it is clear from the Complaint that the operative retaliation claim is the alleged failure by the City of Leander to provide reasonable religious accommodation. Plaintiff's claim for retaliation is entirely dependent upon and duplicative of Plaintiff's claim of the alleged failure to accommodate constituting discrimination.

## V.
## LEGAL ARGUMENT AND BRIEFING

**A.      City Non-Discriminatory Reason for Terminating Plaintiff's Employment.**

Plaintiff's employment discrimination and retaliation claims fail as a matter of law as the City had a legitimate non-discriminatory reason for terminating Plaintiff's employment.

The employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory. *Meiri v. Dacon*, 759 F.2d 989, 995 (2nd Cir. 1985), cert. denied, 474 U.S. 829 (1985). Federal courts do not have a "roving commission

---

[2] Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097 (2000).

to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2nd Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n. 8 (7th Cir. 1987)), and may not "sit as super personnel departments, assessing the merits—or even the rationality—of employers' non-discriminatory business decisions." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991). Thus, "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2nd Cir. 1988).

Plaintiff has the ultimate burden of persuasion of either establishing that the City's conduct "was more likely than not motivated, in whole or in part" by discriminatory reasons (*Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000)) or intentionally discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

For a period of about two months, Plaintiff and the City Fire Department had meetings, exchanged information, consulted internally and externally, and exchanged proposals and counter-proposals, all in an effort to accommodate Plaintiff's request that he not undergo a mandatory vaccine. There is no evidence that this was not a legitimate policy to put in place for employees performing emergency medical response. It is undisputed that the Fire Chief ultimately determined what accommodations he reasonably believed would address both the City's duty and obligations to its employees/public and Plaintiff's asserted religious beliefs.

On March 17, 2016, Chief Gardner presented his final offer to Plaintiff with two choices: other employment within the Department as a code enforcement officer, retraining provided and no change in compensation; or personal protective device usage while on duty and other precautions that would reduce the risk of exposure to Plaintiff, Plaintiff's co-workers and the vulnerable members of the public. Chief Gardner had no obligation to continue discussions after two months of interactive dialogue. Plaintiff was given a deadline to elect his preference and Plaintiff refused to do so. Even after the City initiated disciplinary action against Plaintiff for his failure to elect, he did not do so. As

discussed in detail below, the accommodations offered were reasonable and it would have been an undue burden for the City to have offered accommodation that potentially endangered the health of its employees and the general public.

Plaintiff violated City Fire Department policy by not complying with a direct order and was terminated as a result. As such, the City is entitled to judgment as a matter of law with respect to Plaintiff's claims of discrimination and retaliation.

### B.  The City Offered Reasonable Accommodation.

The City is entitled to summary judgment on Plaintiff's state and federal discrimination and retaliation claims, as it offered Plaintiff reasonable accommodation to address his request for a vaccine exemption. As noted above, once a prima facie case is established, the burden shifts to Defendant to prove that Plaintiff was reasonably accommodated, or that accommodation would have resulted in undue hardship.

In reviewing whether a request for religious accommodation was met by his employer, courts look to the "totality of the circumstances," with an eye to "whether the combination" of accommodations provided by the employer was reasonable. *Sanchez-Rodriguez v. AT&T Mobility Puerto Rico, Inc.*, 673 F.3d 1, 12 (1st Cir. 2012).[3] The question is not whether any individual action by the employer constituted a reasonable accommodation, but whether the series or combination of efforts demonstrate that the employer was acting reasonably. *Sanchez*, at 12-13.

Defendant must only show that it offered a reasonable accommodation, not that it offered the accommodation preferred by the employee or any specific accommodation. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68-69. "[W]here the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer does not need to show that each of the employee's alternative accommodations would result in undue hardship." *Id.* The

---

[3] *See also, Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1030 (8th Cir. 2008) ("What is reasonable depends on the totality of the circumstances"); *Hudson v. W. Airlines, Inc.*, 851 F.2d 261, 266 (9th Cir. 1988)(examining the accommodations available to the employee and concluding that "[a]ll of these accommodations together" provided the employee with a reasonable accommodation).

Court in *Philbrook* expressly recognized that it did not want to create a framework where it would be giving employees "every incentive to hold out for the most beneficial accommodation" even where an employer offers a reasonable accommodation. *Id* at 69.

Once the employer demonstrates that it offered the plaintiff a reasonable accommodation, it has, as a matter of law, satisfied its obligations. *Id.* (noting that, as per the statute's language, "any reasonable accommodation by the employer is sufficient to meet its accommodation obligation").

Courts have held that encouraging a plaintiff to transfer to another position within the company and offering assistance toward that effort constitutes a reasonable accommodation. For example, in *Bruff v. North Mississippi Health Services, Inc.* (244 F.3d 495, 502 (2001)), the Fifth Circuit held that a medical center adequately accommodated an employee who had a religious objection by giving the employee 30 days to find another position and directing an in-house employment counselor to assist the employee. The Court found that "a significant reduction in salary alone ... does not make the accommodation unreasonable." *Id. See also, Pinsker v. Joint Dist. No. 28J of Adams and Arapahoe Counties*, 735 F.2d 388, 390–91 (10th Cir. 1984) (concluding that Title VII does not require an employer to accommodate religious practices "in a way that spares the employee any cost whatsoever").[4]

After two months of interactive dialogue, meetings, exchanged information, internal and external consultation, and exchanges of proposals and counter-proposals, Chief Gardner ultimately offered Plaintiff the option of another position in the same department, at the same pay, and with re-training as the City's expense; a position that would take him out of the fire department communal living situation and would eliminate his role providing emergency medical services. In the alternative, the Chief offered Plaintiff the ability to stay in his role, but under conditions aimed

---

[4] A similar result was reached by the 11th Circuit, when the employer encouraged the employee to obtain new employment with the company and offered her assistance in obtaining a new position. *Walden v. Centers for Disease Control & Prevention*, 669 F.3d 1277, 1294 (11th Cir. 2012). *See also Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 145-46 & 146 n.3 (5th Cir. 1982)(holding that, although "[o]f course, an employee is not required to modify his religious beliefs," "[a] reasonable accommodation need not be on the employee's terms, only").

toward reducing the risk that Plaintiff would expose or be exposed to the conditions that the Tdap vaccine was intended to prevent.

The City of Leander went well beyond the "reasonable accommodation" recognized in *Bruff* and *Walden, supra*. It did not just encourage or provide information about other potential employment opportunities, the City offered Plaintiff a specific position, for the same pay, and in the same department, without any vaccination requirements, but as close to his desired field of employment as it could reasonably provide.

The City of Leander went even further in its efforts to accommodate Plaintiff's asserted religious needs: it also offered a way for him to remain in his desired position, but with precautions taken to address the risks posed by allowing an unvaccinated first responder. As is clear for the summary judgment evidence, reasonable minds differ with respect to the extent of the risk posed by the Tdap related illnesses and the best ways to avoid transmission. *Compare,* Exhibits D–F. The law does not require that the City of Leander develop the perfect solution to a problem that the experts have not solved. It only has to take reasonable steps.

While it could have stopped its efforts at accommodation with the opportunity to work in a different job, as per Dr. Shin's perspective that the risk of exposure for these conditions cannot be accommodated, instead the City of Leander Fire Department offered a way for Plaintiff to try to keep performing in his desired position. Plaintiff claims that the accommodation offered would have been difficult to comply with, and Defendant does not dispute that is likely true. However, Plaintiff never even gave it a try. See, e.g., *E.E.O.C. v. Caribe Hilton Int'l*, 597 F.Supp. 1007, 1012 (D.P.R. 1984)(noting that under an employee's duty to cooperate, an employee is "entitled to refuse any offer of new employment or other accommodation if he so desires, but he simply, then, cannot claim that the [employer] has failed to satisfy his needs").

After two months of interactive dialogue and consideration, Defendant City of Leander offered Plaintiff two choices in its effort to accommodate Plaintiff's objection to the mandatory

vaccination policy. One allowed him to stay in his desired department and current salary, but performing tasks in an environment where the vaccination policy was not in effect; and the other allowed him to stay in his desired position, but with precautions in place to protect both Plaintiff, his co-workers and the vulnerable public that they served. Plaintiff elected not to elect either option. The City provided Plaintiff with not just one, but two, reasonable accommodations. As such, his claims fail as a matter of law.

### C. A Religious Exemption to the Tdap Vaccine is an Undue Hardship.

Upon finding that the City offered Plaintiff a reasonable accommodation (and in this case, two reasonable accommodations), the Court's analysis need go no further. *Philbrook*, 479 U.S. at 68-69 ("Thus, where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer need not further show that each of the employee's alternative accommodations would result in undue hardship."). Nevertheless, Plaintiff's accommodation claim also fails because his request for a religious exemption from the mandatory vaccination requirement would have created an undue hardship.

It is well settled that an employer need not provide a religious accommodation that creates an undue hardship. Unlike accommodations in the context of a disability under the Americans with Disabilities Act, proving an "undue hardship" under Title VII is not onerous. *See Bruff*, 244 F.3d 495, 502 n.20 (comparing undue hardship language of ADA, which requires "significant duty or expense," with the substantially lower standard in context of religious accommodation, which is "anything more than de minimis expense").

In order to withstand constitutional scrutiny, a religious accommodation statute must be "measured so that it does not override other significant interests." *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005). For this reason, it has been said that Congress expects federal religious accommodation statutes to be "applied in an appropriately balanced way." *Id*.

Title VII does not require that safety be subordinated to the religious beliefs of an employee. Accommodations that create or increase a health or safety risk for the employee or others in the workplace satisfies the undue hardship requirement. *See, e.g., Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1384 (9th Cir. 1984)(machinist's request to be exempted from requirement of shaving was undue hardship where facial hair interfered with effectiveness of respirator in event of toxic gas exposure, would risk liability of employer for violation of state safety standards and expose co-workers to more risk); *Kalsi v. New York City Transit Auth.*, 62 F.Supp. 2d 745, 760 (E.D.N.Y. 1998), aff'd, 189 F.3d 461 (2nd Cir. 1999)(employee's request to wear a turban in lieu of hard hat was an undue hardship when it created risks not only for the employee but for co-workers).[5]

Here, the City of Leander Fire Department made the determination, based on the advice and judgment of medical experts that the safety of his first responder personnel and the public they served would benefit from the highest possible rate of Tdap vaccination among persons who work provide emergency medical services and that it was needed to provide the safest possible environment and highest possible quality of care for its patient population. This determination took into account the guidance and directives issued by various professional and governmental organizations, and the fact that vaccination is the best known method to prevent the spread of infection. It is undisputed that the Centers for Disease Control and Prevention (CDC) recommend the Tdap vaccine for all healthcare workers. The policy enacted by the City took into account that the Department's "customers" include uniquely vulnerable patients, including infants and children, pregnant women, the elderly, and those suffering from chronic health conditions and weakened immune systems.

---

[5] Risk of harm alone can be an undue hardship; an employer need not demonstrate that a requested accommodation will actually result in harm. *Finnie v. Lee Cnty., Miss.,* 907 F. Supp. 2d 750, 782 (N.D. Miss. 2012)(holding that the employer does not have to show that there has been an actual case of safety problems, just that there are safety risks). "The employer's limited duty of accommodation under Title VII does not require an employer to choose between potential Title VII liability on the one hand and experimenting with increased risk of workplace injuries on the other." *Id.* at 779 (quoting *E.E.O.C. v. Oak-Rite Mfg. Corp.*, No. IP 99-1962-C H/G, 2001 WL 1168156, at *1 (S.D. Ind. Aug. 27, 2001)).

Plaintiff was a first responder, providing immediate medical services during emergency situations. He would therefore work closely with patients, physically providing medical attention. His failure to vaccinate posed a risk to the vulnerable patients, to himself, to his family, and to his co-workers, particularly those that he lived in close proximity with in the firehouse.

In balancing the City's interests and Plaintiff's, the City undertook an extensive effort to address all concerns. In an area of medicine where reasonable, expert minds differ and a matter of first impression for the City of Leander Fire Department, the City faced a difficult assessment. It ultimately reached a conclusion that it reasonably believed found a balance between competing interests. While Plaintiff's religious interest needed to be preserved, the City could not do so at the expense of the community it serves. In light of the particular nature of the operations of the Fire Department's "business" of providing emergency medical services to its citizens, and the risk of the transmission of serious and potentially deadly disease constitutes an undue burden. As a result, Defendant is entitled to judgment as a matter of law.

**D.      No Violation of Plaintiff's First Amendment Rights.**

Defendant City of Leander and Chief Gardner are additionally entitled to summary judgment with respect to Plaintiff's First Amendment claim. Plaintiff claims that his termination and the alleged failure to find a reasonable accommodation violated his right to free exercise of his religion.

The free exercise clause guards the individual's practice of her own religion against restraint or invasion by the government. U.S. Const. Amend. I. In order to prevail on his free exercise claim, Plaintiff must show that the City of Leander impermissibly burdened one of his sincerely held religious beliefs. *Frazee v. Ill. Dep't of Employment Sec.*, 489 U.S. 829, 834 (1989)).

When a First Amendment claim is asserted against a governmental employee, the courts apply the *Pickering* balance test: balancing the First Amendment rights of the employee or contractor against the interests of the government as an employer, with an interest in promoting the efficiency of the public services it performs through its employees. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568

(1968). This balancing test has been applied to free exercise of religion claims, as well as to the freedom of speech claims that were addressed in *Pickering. See, e.g.*, *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 257-60 (6th Cir. 2006).[6] To establish a prima facie case of violation of First Amendment rights regarding free exercise of religion, Plaintiff must show that: (1) Defendant imposed a substantial burden on Plaintiff's belief; (2) Plaintiff's belief is sincerely held; and (3) Plaintiff's belief is religious in nature. *See, e.g., Altman v. Minnesota Dep't of Corr.*, 251 F.3d 1199, 1204 (8th Cir. 2001)(to prevail on their free exercise claim, plaintiffs must first show that the governmental action complained of substantially burdened their religious activities). To "substantially burden" means to "prevent[ ] [an] individual from engaging in religiously mandated activity, or [to] ... require[ ] participation in an activity prohibited by religion." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1226 (11th Cir. 2004).

Moreover, the First Amendment Free Exercise Clause does not relieve an individual of the obligation to comply with a valid and neutral law on the ground that the law contradicts the individual's religious beliefs. *Employment Div., Dept. of Human Resources of Or. v. Smith*, 494 U.S. 872, 878 (1990). In *Smith*, the Supreme Court held that the Free Exercise Clause does not inhibit enforcement of otherwise valid laws of general application that incidentally burden religious conduct. *Id* at 878–82 (holding that the Free Exercise Clause did not bar the State of Oregon from enforcing its blanket ban on peyote possession with no allowance for sacramental use of the drug)."A law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

---

[6] See also, *Berry v. Dept. of Soc. Servs.*, 447 F.3d 642, 645-46, 651-52 (9th Cir. 2006) ; *Shahar v. Bowers*, 114 F.3d 1097, 1103, n. 27 (11th Cir. 1997)(applying *Pickering* to plaintiff's free exercise claim) and *Brown v. Polk County*, 61 F.3d 650, 658 (8th Cir. 1995)(noting that *Pickering* "dealt with free speech rather than the free exercise of religion" but finding "no essential relevant differences between those rights"). The salient fact in *Pickering* is that it involved a government employer, with the attendant need to promote the effective and efficient provision of government services. *Waters v. Churchill*, 511 U.S. 661, 675 (1994).

The *Smith* principle has been applied to criminal and civil laws, rules, and policies that are neutral and of general applicability. *See, e.g., Seabrook v. City of New York*, 210 F.3d 355, 2000 WL 349276, at *1–*2 (2nd Cir. 2000)(denying employees' motion for a preliminary injunction to enjoin enforcement of a new Department of Correction directive forbidding correction officers from wearing skirts while on duty, expressly finding that workplace rules are also subject to *Smith*). *See also, Kalsi*, 62 F.Supp.2d at 761 (neutral enforcement of employer's hard hat requirement did not violate the Free Exercise Clause); *Finnie*, 907 F.Supp.2d at 763-65 (finding that neutral enforcement of the employer's pants only requirement did not violate the Free Exercise Clause).

The Fifth Circuit has applied *Smith* to a free exercise challenge where a police officer was terminated after he refused to stop wearing a gold cross pin on his uniform that violated the police department's "no pins" policy. *See Daniels v. City of Arlington*, 246 F.3d 500, 505 (5th Cir. 2001). On appeal, the Fifth Circuit held that the policy did not violate the First Amendment, citing to *Smith* based on the district court's finding that the no-pins policy was facially neutral and generally applicable, and only incidentally burdened the employee's free exercise of his religion. *Id.*

Even if the *Smith* standard was not dispositive, the City of Leander is entitled to judgment on the First Amendment claim under the *Pickering* balancing test. The City's need to protect its employees and members of the public from the transmission of serious and sometimes life-threatening diseases is of the utmost concern, primarily from an ethical and moral duty not to expose persons to harm, but also from financial and legal ones—avoiding costly worker's compensation claims and potential civil liability to patients and their family members and employee family members if exposure was to occur. *See, supra,* above on reasonable accommodation/undue hardship.

Individual Defendant Chief Gardner is additionally entitled to dismissal on the basis of qualified immunity. Qualified immunity "shields public officials ... from damages actions unless [their] conduct was unreasonable in light of clearly established law." *Elder v. Holloway*, 510 U.S. 510, 511 (1994). Although Defendants dispute that any First Amendment claim is stated against

Defendants, *supra*, in the unlikely event the Court determines a fact issue regarding the same exists, the individual Defendant is still entitled to dismissal from this case as there was no violation of a clearly established right.

Individual public officials performing discretionary functions are entitled to complete protection as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known—a right that was clearly established at the time of the misconduct. *Loftus v. Clark–Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012); *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012).

While it was clearly established at the time of Plaintiff's termination that a public employer may not retaliate against an employee for an exercise of constitutionally protected speech, the question before the Court is whether the right was clearly in light of the specific context of this case, not as a general legal standard. *Terrell*, 668 F.3d at 1250. Whether speech is protected public speech and whether the interests of the government outweigh the individual is a balancing test that the Court performs, weighing various factors. In light of the various facts and factors discussed above a reasonable government official could weigh the factors and reach the conclusion that it could take action against Plaintiff.

Lastly, Defendant City of Leander is additionally entitled to summary judgment with respect to Plaintiff's First Amendment retaliation claim because of the City of Leander's sovereign immunity. It is well-established that municipal liability for constitutional torts only arises when it is the execution of an official policy causes the plaintiff's injury. See *Monell v. Department of Soc. Svcs.*, 436 U.S. 658, 694 (1978). Based on the investigation of this policy violation, Chief Gardner terminated Plaintiff. However, as per City Policy, his decision was subject to appeal and reconsideration by the City Manager.

The City Manager is the final decision-maker for the City of Pflugerville with respect to Plaintiff's employment conditions and status. Plaintiff had the opportunity to challenge the Chief's

decision, to present evidence in support of his position, and to seek a review and reconsideration of the termination. To the extent Plaintiff claims that the allegedly unreasonable accommodations and the decision to terminate his employment for failing to elect one of the offered choices constituted a violation of his freedom of religion, those decisions were not made by the City's final decision-maker.

Since there is no evidence of a violation of or a policy or custom of the City of Leander to violate Plaintiff's constitutional rights, the City and Chief Gardner are entitled to judgment with respect to the First Amendment claim as a matter of law.

WHEREFORE, PREMISES CONSIDERED, Defendants CITY OF LEANDER and CHIEF GARDNER pray that this Court grant its Motion for Summary Judgment, and for such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

FLETCHER, FARLEY,
SHIPMAN & SALINAS, L.L.P.
2530 Walsh Tarlton Lane, Suite 150
Austin, Texas 78746
(512) 476-5300
FAX (512) 476-5771

By:/s/ Joanna Lippman Salinas
Joanna Lippman Salinas
State Bar No. 00791122
joanna.salinas@fletcherfarley.com

Attorneys for Defendant,
*City of Leander, Texas*

## Certificate of Service

I here certify that a true and correct copy of the foregoing **Defendants' Motion for Summary Judgment** has been provided to:

Matt Bachop
**DEATS DURST & OWEN, PLLC**
707 W. 34th Street
Austin, Texas 78705

by Electronic Service in accordance with the Federal Rules of Civil Procedure, on May 25, 2018.


/s/ Joanna Lippman Salinas
Joanna Lippman Salinas