IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BRETT HORVATH, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:17-CV-256-RP |
| CITY OF LEANDER, TEXAS, and BILL GARDNER, in his official and individual capacities, | § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is a motion for summary judgment, (Dkt. 28), filed by Defendants City of Leander, Texas (the "City" or "Leander") and Bill Gardner ("Gardner") (collectively, "Defendants"). Defendants seek an order disposing of all of Plaintiff Brett Horvath's ("Plaintiff" or "Horvath") claims. After reviewing the parties' arguments, the record, and the relevant case law, the Court issues the following order.

## I. BACKGROUND

Horvath is an ordained Baptist minister and objects to prophylactic vaccination as one aspect of his religious beliefs. (*See* Pls.' Resp. Mot. Summ. J., Dkt. 21-1, at 5–7; Mot. Summ. J., Ex. A, Dkt. 26-3, at 39). Horvath was hired by the City of Leander Fire Department on April 7, 2012 as a Firefighter/EMT. (Mot. Summ. J., Ex. A, Dkt. 26-3, at 12).

On October 1, 2014, the Department adopted an infection control plan to provide a safe and healthy work environment for its staff and the public served by its first responders, which included firefighters. (*See* Mot. Summ. J., Ex. B, Dkt. 26-4, at 94–101). Pursuant to this policy, the Department provided infectious disease immunizations to its employees, consistent with the Center for Disease Control ("CDC") vaccination recommendations for adults. (*Id.*). The Department issued

1

a directive on November 3, 2014, requiring fire department personnel receive a vaccine for influenza. (*Id.* at 79). Horvath twice sought and received an exemption from the directive on religious grounds; once in 2014 as a Firefighter and again in 2015 as a Driver/Pump Operator. (Mot. Summ. J., Ex. C, Dkt. 26-5, at 2–3). Chief Bill Gardner approved the exemption on the condition that Horvath use increased isolation, cleaning, and personal protective equipment to prevent spreading the influenza virus to himself, co-workers, or patients. (Mot. Summ. J., Ex. A, Dkt. 26-3, at 61).

Horvath was promoted from Firefighter to Driver/Pump Operator on July 6, 2015. (*Id.* at 5). The duties of a Driver/Pump Operator involve driving fire personnel to the scene of an emergency, plus general firefighter duties such as responding to rescue and fire suppression scenes and performing first responder duties for medical and non-medical emergencies. (*Id.* at 13–16).

In 2016, the City of Leander mandated that all personnel receive a TDAP vaccine, which immunizes for three bacterial diseases: tetanus, diphtheria, and pertussis or whooping cough. (Mot. Summ. J., Ex. B, Dkt. 26-4, at 77). City firefighters were also sent for TB testing and Immunization boosters because of their first responder duties. (Mot. Summ. J., Ex. A, Dkt. 26-3, at 78). On January 14 and 20, 2016, Horvath sought an exemption from this directive on religious grounds. (*Id.* at 48–49). Over the months that followed, Horvath, Chief Gardner, and other members of the Department discussed potential alternatives to vaccination and accommodations to address Horvath's objection to the vaccine. (*Id.* at 17–21, 26–37, 50).

On March 17, 2016, the City finalized its accommodation proposal, and gave Horvath two options. (*Id.* at 35–36). First, Horvath could be reassigned to the position of Code Enforcement Officer. (*Id.* at 33). That position offered the same pay and benefits, and the City would cover the costs of training. (*Id.*). In that position, no vaccines would be required. (*Id.*). Alternatively, Horvath could remain in his current position as a first responder if he agreed to wear personal protective

equipment[1] at all times while on duty, submit to testing for possible diseases when his health condition justified, and keep a log of his temperature. (*Id.*). The City gave Horvath until March 24, 2016 to respond to its proposal. (*Id.*).

Horvath declined both options and instead suggested alternatives. (*Id.* at 37). Horvath agreed to most of the proposed infection control measures that would enable him to remain as a firefighter, but he objected to wearing an N95 respirator at all times; Horvath did not believe doing so was medically necessary. (*Id.*; Mot. Summ. J., Ex. B, Dkt. 26-5, at 7). Instead, Horvath proposed to wear the respirator "when encountering patients who are coughing or who have a history of communicable illness." (*Id.* at 37). In response, Chief Gardner refused to continue negotiations and repeated the City's proposal. (*Id.* at 38). He gave Horvath until March 28, 2016 to respond.

On March 23, 2016, Horvath again rejected both options as unreasonable and inconsistent with medical authority. (*See id.*, at 39). Horvath thought the code enforcement position involved "much less favorable work schedule and less desirable job duties" and thus was not a reasonable accommodation. (*Id.*). Horvath again objected to wearing the N95 respirator, stating that he had "not been able to find any evidence based on medical authority indicating that constant n95 mask usage is a recommended infection control procedure in lieu of a Tdap vaccine." (*Id.*). But he noted that if the Chief had "evidence based on medical information" to the contrary, he was "willing to review it and consider changing [his] position." (*Id.*). Horvath repeated his preferred alternate infection control procedures from his previous response. (*Id.*).

Based on Horvath's response, Chief Gardner ordered an investigation to either determine which option Horvath selected or determine his rejection of both. (*Id.* at 40). Gardner characterized Horvath's failure to select an option or clearly decline them as "a violation of a directive given by the

---

[1] Specifically, the record suggests that Horvath would be required to wear an N95 respirator during Horvath's shift. (*See*, e.g., Dkt. 26-3, at 37; DKt. 26-7, at 27–31).

3

Fire Chief" and "willful disobedience of, or deliberate refusal to obey a directive that is legal, ethical, and safe from a supervisor" in violation of "Code of Conduct 4B." (*Id.*). During the investigation, Horvath admitted to declining both options presented to him, and declined both options a second time. (*Id.* at 41–43). The investigation concluded that Horvath violated the Department's Code of Conduct by willfully disobeying an order, (*id.* at 43, 45), and Horvath was terminated as a result, (*id.* at 51–52).

Horvath originally sued Gardner and the City of Leander in Texas state court alleging (1) discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) discrimination and retaliation in violation of the Texas Commission on Human Rights Act ("TCHRA"); and (3) a claim under 42 U.S.C. § 1983 for violation of his right to freely exercise his religion under the First Amendment. (*See* Dkt. 1-1, at 5–6). Defendants removed this case to federal court, (Dkt. 1), and Horvath amended his pleadings, (Am. Compl., Dkt. 4). Defendants moved for Summary Judgment. (*See* Am. Mot. Summ. J., Dkt. 28).

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of

4

evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The "burden of production at trial ultimately rests on the nonmovant" and the movant must merely show an "absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

The nonmoving party must then come forward with specific facts showing that there is a genuine issue for trial. *Id.* The nonmovant "must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted). The nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010); *see also Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991) ("Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence."). The Court views this evidence in the light most favorable to the nonmovant. *Hills v. Entergy Operations, Inc.*, 866 F.3d 610, 613 (5th Cir. 2017). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Miss. River Basin All. v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).

### III. DISCUSSION

Horvath alleges that Defendants discriminated and retaliated against him[2] based on religion in violation of Title VII and the TCHRA.[3] Horvath also alleges the City and Chief Gardner violated

---

[2] Title VII prohibits discrimination by an "employer" defined as "a person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. §§ 2000e(b), 2000e–2. Title VII includes "any agent" of an employer in its definition of the term "employer," but the Fifth Circuit has noted that "Congress's purpose was merely to import *respondeat superior* liability into Title VII. *Smith v. Amedisys Inc.*, 298 F.3d 434, 448–49 (5th Cir. 2002). Individuals are not liable under Title VII in either individual or official capacities. *Id.*; *Ackel v. Nat'l Comms., Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003), *but see Muthukumar v. Kiel*, 478 F. App'x 156, 158 (5th Cir. 2012) (unpublished) (suggesting that "it may be proper to name a supervisor as the defendant as the agent of the actual employer"). As a result, the Court construes Horvath's discrimination and retaliation claims as brought only against the City of Leander.

[3] The TCHRA was "modeled after federal civil rights law" and has as an express purpose to provide for the execution of Title VII policies. *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). The TCHRA "purports to correlate state

his right to freely exercise his religion under the First Amendment. Defendants seek summary judgment on all Horvath's claims. The Court addresses each in turn.

*A. Title VII and TCHRA Discrimination*

Title VII makes it unlawful for an employer to discriminate against an employee on the basis of religion. 42 U.S.C. § 2000e–2(a)(1). "An employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but it is not required to incur undue hardship." *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 263 (5th Cir. 2000). "Undue hardship" exists as a matter of law where an employer is required to bear more than a de minimis cost. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977). "Title VII does not restrict an employer to only those means of accommodation that are preferred by the employee;" once an employer established that it offered a reasonable accommodation, it has satisfied its obligation under Title VII as a matter of law. *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 501 (5th Cir. 2001). This triggers an accompanying duty in the employee: "An employee has a duty to cooperate in achieving accommodation of his or her religious beliefs, and must be flexible in achieving that end." *Bruff*, 244 F.3d at 503; *see also Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1294 (5th Cir. 2012).

The Court analyzes a Title VII claim for failure to accommodate religious beliefs similar to the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Davis v. Fort Bend Cty.*, 765 F.3d 480, 485 (5th Cir. 2014). First, a plaintiff must establish a prima facie case of religious discrimination by demonstrating that: "(1) he has a bona fide religious belief that conflicts with an employment requirement; (2) he informed the employer of this belief; and (3) he was disciplined for failure to comply with the conflicting employment requirement." *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000). Defendants do not dispute that Horvath has established

---

law with federal law in the area of discrimination in employment," so Texas courts "look to analogous federal precedent for guidance when interpreting" the TCHRA. *Id.* (citations and quotation marks omitted). Accordingly, the Court will analyze Horvath's Title VII and TCHRA religious discrimination and retaliation claims under the same standards.

6

a prima facie case of religious discrimination based on failure to accommodate.[4] As a result, the burden shifts to the City to show either that it reasonably accommodated Horvath or that it was unable to do so without undue hardship. *Davis*, 765 F.3d at 584 (quoting *Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013)).

Defendants say they offered Horvath not one, but two reasonable accommodations. First, they negotiated potential accommodations with Horvath for a period of two months. Second, they presented two choices to Horvath: (1) transfer to another position with the Department as a code enforcement officer that would not require vaccination with no change in compensation, or (2) required usage of personal protective equipment while on duty to prevent exposure. (Mot. Summ. J., Dkt. 28, at 10). Alternatively, Defendants argue that they could not accommodate Horvath's religious objection without suffering undue hardship. (*Id.* at 16).

The Court agrees that Defendants provided a reasonable accommodation by offering to transfer Horvath to another position in the department.[5] Offering an employee the opportunity to transfer is a reasonable accommodation. *Bruff*, 244 F.3d at 502. This is true even if the transfer comes with less compensation; "a significant reduction in salary alone . . . does not make the accommodation unreasonable." *Id.* In *Bruff v. North Mississippi Health Services*, Bruff, a counselor at North Mississippi Medical Center, sought to be excused from offering relationship counseling to homosexual patients and patients with extra-marital sexual relationships on religious grounds. *Id.* at 497. Ultimately, the Medical Center found that Bruff would be unable to fulfill her counseling duties

---

[4] Defendants do not question the sincerity of Horvath's religious objection to the use of prophylactic vaccines, which squarely conflicts with the Department's directive that all its personnel receive a TDAP vaccination. It is also undisputed that Horvath informed his employer of this objection; he repeatedly sought and received an exemption from the influenza vaccine on religious grounds and voiced a religious objection to the TDAP vaccine. Finally, Horvath was terminated for failure to comply with a direct order—the Fire Department's mandatory vaccination policy requiring personnel receive a TDAP vaccine. (Mot. Summ. J., Dkt. 28, at 1–2, 5).

[5] In finding the offer of transfer reasonable, the Court finds that the City has satisfied its duty under Title VII. *See Bruff*, 244 F.3d at 501. As a result, the Court need not assess whether the second proposed accommodation to wear an N95 respirator on duty was reasonable.

7

because patient care issues could not be determined in advance. *Id.* at 497–98. The Medical Center gave Bruff 30 days to find another position, and offered her assistance in finding a transfer. *Id.* at 502. Bruff declined several available positions. *Id.* at 502–03. The Fifth Circuit found this effort reasonable, and concluded that Bruff "displayed almost no . . . cooperation or flexibility." *Id.* at 503.

Here, the City went beyond its obligation to offer an opportunity and assistance to find another position—the Department offered Horvath the option to continue employment in another position that would not require significant interaction with at-risk populations. As a result, Horvath could have continued employment without receiving a TDAP vaccine, consistent with his religious beliefs. Moreover, Horvath would have received the same salary in the Code Enforcement Officer position as he received as a firefighter.

Yet Horvath declined to accept this offer to accommodate his beliefs. He argues that the City's proffered accommodations were not reasonable. First, he argues that whether an accommodation is reasonable is a question for the jury. (Pls.' Resp. Mot. Summ. J., Dkt. 21, at 10). Second, he argues that because the offered accommodations are essentially infection control measures, whether they were reasonable depends on whether Horvath was at risk of transmitting infectious diseases by refusing the TDAP vaccine. (*Id.* at 10–11). Finally, Horvath argues that the transfer is not a reasonable accommodation because (1) he considers the code enforcement job less prestigious and (2) the hours for the code enforcement job would require him to give up his second job, resulting in loss of over half his income.[6] (*Id.* at 12).

It is true that questions of reasonableness are ordinarily left to the fact finder, but where "the facts and inferences point so strongly and overwhelmingly" in favor of the movant, the Court may

---

[6] Horvath ran a construction company when he was on duty with the Leander Fire Department. (Pls.' Resp. Mot. Summ. J., Dkt. 21, at 7). He notes that during the last full year he worked for the Leander Fire Department, he earned more from the construction company than as a firefighter. (*Id.*). Because working in code enforcement required working normal business hours, Horvath says he would have had to shut down the construction company, resulting in a loss of over half his income. (*Id.*)

8

grant summary judgment. *Bruff*, 244 F.3d at 503. Such is the case here. The Fifth Circuit has noted that merely encouraging transfer and offering assistance in obtaining a new position is sufficient for an employer to meet its burden under Title VII. *See id.* at 502; *Walden*, 669 F.3d at 1294. After months of negotiations, the City did not just encourage transfer and offer assistance; it outright offered Horvath a specific position within the Department that would not require vaccination.

With respect the department's vaccine requirement, the question for the Court is not "[w]hether the employer's decision was the correct one, or the fair one, or the best one" but "whether the employer's [action] was motivated by discrimination." *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 278 (5th Cir. 1999). The Department here concluded, based on recommendations for health care workers by the CDC, State Health Department, and Williamson County officials, that required vaccination of EMS and first responders would protect public health and safety. (Mot. Summ. J., Ex. A, Dkt. 26-3, 75–81; Ex. C, Dkt. 26-6, at 3; Ex. F, Dkt. 26-7, at 49). It is not disputed that firefighters are considered first responders. There is no evidence in the record that this policy was motivated by any discriminatory animus.

Finally, the fact that transferring Horvath would have resulted in a loss of income does not make the City's proposed accommodation unreasonable. From the City's perspective, it is only obligated to offer a reasonable accommodation, which includes the opportunity to transfer. An accommodation may be reasonable even it if imposes some cost to the employee. *Eversley v. MBank Dall.*, 843 F.2d 172, 176 (5th Cir. 1988). In fact, transfer opportunities that require a plaintiff to take a "significant reduction in salary" may still be considered a reasonable accommodation. *Bruff*, 244 F.3d at 502 n.23 (citing *Hardison*, 432 U.S. at 73; *Eversley*, 843 F.2d at 176). Here, the City offered Horvath a different position outright without any reduction in salary. It had no control over Horvath's outside source of income.

The City fulfilled its obligations under Title VII to offer a reasonable accommodation to Horvath's religious objection. In order to meet its burden, the City need only show that it offered a reasonable accommodation, not that it offered an employee's preferred accommodation. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68–69 (1986). The Court finds that City has met its burden here.[7]

### B. Title VII and TCHRA Retaliation

Title VII makes it unlawful for an employer to retaliate against an employee who opposes an employment practice that violates Title VII. 42 U.S.C. § 2000e–3(a). Horvath's retaliation claim is analyzed under the *McDonnell Douglas* framework. *See Davis*, 765 F.3d at 489. First, a plaintiff must show a prima facie case of retaliation by showing: "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Id.* at 489–90 (quoting *Ikossi–Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 551 (5th Cir. 2009)). Once an employee establishes a prima facie case, "the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision." *Id.* at 490 (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007)). After that, the burden shifts back to the employee to demonstrate that the employer's reason is pretext for retaliation. *Id.*

Horvath says he has stated claim for retaliation independent of his discrimination claim. He engaged in protected activity by opposing in a letter Chief Gardner's demand that Horvath wear a respirator during his shifts even though other firefighters who had not proven immunity to pertussis were not similarly required. (Pls.' Resp. Mot. Summ. J., Dkt. 21, at 14). Horvath suffered an adverse action when he was fired for insubordination. (*Id.*). As for the causal link, Horvath argues that Chief

---

[7] Having concluded that the City offered a reasonable accommodation to Horvath, the Court need not examine whether accommodating Horvath's religious beliefs would result in undue hardship or examine less burdensome alternatives. *See Ansonia Bd. of Educ.*, 479 U.S. at 68–69 ("[W]here the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer does not need to show that each of the employee's alternative accommodations would result in undue hardship.").

Gardner referred to Horvath's letter as a reason for terminating him in both his order to investigate and in the termination notice. (*Id.*).

The City does not argue that Horvath failed to establish a prima facie case of retaliation, but instead contends that his retaliation claim is "entirely dependent and duplicative" of Horvath's discrimination claim. (Mot. Summ. J., Dkt. 28, at 9). The City also offers a legitimate, non-retaliatory reason for terminating Horvath: His termination was based on his defiance of a direct order by failing to select an accommodation to the TDAP vaccine policy. (Defs.' Reply Pls.' Resp. Mot. Summ. J., Dkt. 22, at 6). This argument questions whether Horvath has established a causal link between his termination and the alleged protected activity.

"Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened [motivating factor] causation test." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). To show a causal connection, the plaintiff must prove that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.*

Horvath fails to dispute the City's proffered non-retaliatory reason for terminating him. There is no dispute that termination is an adverse action. However, Chief Gardner's order to investigate makes clear that Horvath was terminated for failing to accept an accommodation for the TDAP vaccine policy. (*See* Mot. Summ. J., Ex. A, Dkt. 26-3, at 40, 44, 51–52). The Department construed this failure as willfully disobeying a directive by the Fire Chief. (*Id.*). Thus, Horvath was terminated not for engaging in protected activity by opposing a discriminatory practice in a letter, but for failing to comply with a directive that conflicted with his religious beliefs. In essence, Horvath appears to argue that the City's proffered, non-retaliatory reason was pretext for discrimination based on his religious beliefs rather than retaliation for engaging in protected activity.

But there is a distinction between evidence of pretext for discrimination and evidence of pretext for retaliation. *Davis*, 765 F.3d at 491. As a result, Horvath's retaliation claim fails.

### C. Free Exercise Claim

Horvath alleges that the City and Chief Gardner[8] violated his right to freely exercise his religion. The Free Exercise Clause of the First Amendment[9] provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend. I. Government regulations that are neutral and generally applicable survive a free exercise challenge where the regulation is reasonably related to a legitimate state interest. *See Emp. Div., Dep't of Human Res. v. Smith*, 494 U.S. 872 (1990). "[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

#### 1. Against the City of Leander and Chief Gardner in his Official Capacity

Municipal liability under § 1983 requires proof of (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose moving force is the policy or custom. *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A policymaker must have final policymaking authority; "municipal liability cannot be sustained under a theory of *respondeat superior*." *Id.* The constitutional violation "must be directly attributable to the municipality through some sort of official action." *Id.* (quoting *Piotrowski v. City of*

---

[8] A court's remedial power under § 1983 against public officials in their official capacity is limited to prospective injunctive relief; a court cannot award money damages. *Ex Parte Young*, 209 U.S. 123 (1908). In addition, suits against officials in their official capacities generally represent only another way of pleading an action against an entity of which an officer is a part. *Rayborn v. Bossier Sch. Bd.*, 881 F.3d 409, 417 (5th Cir. 2018) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). The Court thus construes Horvath's § 1983 claims seeking money damages against Chief Gardner in his individual capacity only and analyzes Horvath's claims against Gardner in his official capacity and his claims against the City of Leander under the same standards.

[9] The First Amendment has been made applicable to the states by incorporation in the Fourteenth Amendment. *See Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 292 n.26 (5th Cir. 2001).

*Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). An official policy is either (1) "[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority," *Brown v. Bryan Cty., OK*, 219 F.3d 450, 457 (5th Cir. 2000) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)), or (2) "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy," (*id.*). In some cases, a final decision-maker's adoption of a course of action tailored to a particular situation and not intended to control later decisions may give rise to municipal liability. *Id.* (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 407 (1997)).

The City argues that Horvath's claims fail for two reasons: (1) Horvath has not alleged a constitutional violation, (Mot. Summ. J., Dkt. 28, at 16), and (2) Horvath has not identified a policymaker, (*id.* at 19–20). According to the City, the City Manager—not Chief Gardner—is the final policymaker for employment matters in the Fire Department. (*Id.*).

The Court agrees that Horvath has not alleged a constitutional violation. Assuming without deciding that Chief Gardner was a policymaker for municipal liability purposes, Horvath fails to allege a policy or a violation of constitutional rights whose moving force is the policy or custom. Horvath specifically alleges that the Department policy "that without immunity to pertussis conferred by a recent vaccine, Mr. Horvath must wear a respirator at all times to engage in fire-fighting duties" violated his constitutional rights. (Pls.' Resp. Mot. Summ. J., Dkt. 21, at 15–16). Horvath specifically points to a statement by Gardner that when a firefighter receives a TDAP vaccine and follow-up testing reveals the vaccine did not confer immunity, those firefighters are directed to receive a second round of vaccinations and are not required to wear a respirator while on

13

duty in the interim. (*Id.* (citing Dkt. 21-2, at 11–12)). Thus, the policy is not neutral or generally applicable, and it violated Horvath's right to freely exercise his religion.

First, the Court must determine whether the single decision by Chief Gardner to require Horvath wear a respirator amounts to a policy for the purposes of *Monell* liability. The respirator requirement was not an official policy, but one of two accommodations offered to Horvath in light of his religious objection to the TDAP directive. (*See* Mot. Summ. J., Ex. A, Dkt. 26-3, at 38). Horvath could have avoided the use of a respirator by transferring to another position. (*Id.*). Horvath refused. (*Id.* at 39). Furthermore, Horvath has not identified any individual who was able to continue firefighting duties despite declining to comply with the TDAP directive.

Even if the respirator requirement does constitute an official policy, Horvath has not alleged a violation of his right to freely exercise his religion. First, Horvath has not identified any discriminatory animus against Horvath's religion in proposing that he wear a respirator. The requirement is not aimed at a specific religious practice; it is an attempt to address concerns raised by transmitting infectious diseases by health care workers. *Cf. Smith*, 494 U.S. at 894. On its face, the respirator requirement is neutral and generally applicable.

Next, it is not clear that Horvath's right to freely exercise his religious beliefs was burdened at all by the respirator requirement. On the contrary, the respirator requirement would have enabled Horvath to practice his faith—The Department offered an avenue by which Horvath could avoid vaccination yet maintain his position as a firefighter. Here, Horvath's real argument lies not with the respirator requirement, but with the TDAP directive itself. The respirator requirement only arose as a proposal to avoid conflict between Horvath's religious beliefs and an employment requirement. Not to mention, Horvath could have avoided the respirator requirement entirely by transferring to another department. As a result, the respirator requirement only incidentally affected Horvath's

individual religious practice and beliefs; this is acceptable under *Smith*. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 505 (5th Cir. 2001).

It is worth noting that Horvath never opted to wear a respirator while on duty as an accommodation. Horvath would have been terminated even if wearing a respirator on duty was never an option. As noted above, the Department offered Horvath a reasonable accommodation to transfer him to another position. Horvath refused. He was terminated for failing to vaccinate or otherwise accept any accommodation presented to him, not for failure to wear a respirator on duty. (*See* Mot. Summ. J., Ex. A, Dkt. 26-3, at 40, 44, 51–52). Rather than violating Horvath's free exercise of his religious belief, the respirator requirement "merely removes or reduces one of many avenues by which [he] may manifest [his] faith." *Id.* (quoting *Green v. Polunsky*, 229 F.3d 486, 491 (5th Cir. 2000)). In fact, it provided an opportunity for Horvath to continue employment consistent with his religious beliefs. An incidental burden imposed by a policy not specifically targeting a religious practice is insufficient to allege a violation of Horvath's First Amendment rights.

2. *Against Chief Gardner in his Individual Capacity*

Chief Gardner argues that he is entitled to qualified immunity for claims against him in his individual capacity. Once a defendant pleads qualified immunity, the burden shifts to the plaintiff to negate the defense. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). "To overcome an official's qualified immunity defense, a plaintiff must show that the evidence, viewed in the light most favorable to him, is sufficient to establish a genuine dispute (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotation marks omitted)). The Court has discretion to decide which prong of the qualified immunity analysis to address first. *See Pearson v. Callahan*, 555

U.S. 223, 236 (2009). For the reasons stated above, Gardner is entitled to qualified immunity because Horvath has not shown that he violated a constitutional right.

## IV. CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by Defendants City of Leander and Bill Gardner, (Dkt. 28), is **GRANTED**.

**SIGNED** on October 10, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE